IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ARROW TRUCK SALES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-0386-CV-W-ODS |
| | ) | |
| TOP QUALITY TRUCK & EQUIPMENT | ) | |
| and JOE GELFO, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER AND OPINION TRANSFERRING
THE CASE TO THE MIDDLE DISTRICT OF FLORIDA

Pending is Defendants' Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction (Doc. # 6).  Plaintiff opposes the Motion.  All parties request that in the alternative, the Court transfer the case the Middle District of Florida.[1] The Court concludes that personal jurisdiction is lacking, and the case is transferred to the Middle District of Florida.

I. BACKGROUND

Plaintiff, Arrow Truck Sales, Inc. ("Arrow Truck"), is a corporation organized and existing under the laws of Missouri with its principal place of business in Missouri.  It is in the business of buying and selling used semi-trucks and trailers.  Defendant Top Quality Truck & Equipment ("Top Quality") is a corporation organized and existing under the laws of Florida.  Joe Gelfo ("Gelfo"), an employee of Top Quality, is an individual and resident of Florida.  Top Quality maintains no offices in the State of Missouri.

On December 13, 2013, Gelfo contacted Nick Lombardo ("Lombardo"), an employee of Arrow Truck who worked at the Corporate Office in Kansas City, Missouri.

---

[1] The corporate home of Top Quality is within the Middle District of Florida.  Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

Gelfo inquired whether Arrow Truck would be interested in purchasing twelve trucks, which were located in Memphis, Tennessee.  Between December 13, 2013, and January 24, 2014, Gelfo sent Lombardo several emails offering to sell the trucks at different terms.  Gelfo and Lombardo engaged in multiple telephone conversations and email exchanges regarding the trucks and potential terms for the transaction.  During these conversations, multiple offers and counteroffers were made.  Finally, during a January 24, 2014 telephone conversation, Gelfo and Lombardo agreed on a price for the trucks, subject to trade terms and several conditions.  Before Arrow Truck would pay for the trucks, Arrow Truck had to verify that Top Quality was the owner of the trucks, a representative of Arrow Truck had to inspect the trucks, and Arrow Truck and Top Quality had to reach an agreement on any necessary repairs and/or price adjustments.

Following the January 24, 2014 telephone conversation, Gelfo sent Lombardo copies of the front of the twelve truck titles and a copy of the back of one title.  The front of the twelve titles did not show that Top Quality owned the trucks.  Lombardo reviewed the single reverse side provided and it appeared to him that Tri State Truck Enter, Inc. had assigned ownership of the at-issue truck to Top Quality.  Plaintiff alleges that at no time did Top Quality or Gelfo tell Lombardo that any other company or person owned the trucks or that there were any liens against the trucks.  Plaintiff now contends that Top Quality was not the actual owner of the trucks and VFS Leasing Co. still had a lien on the trucks.

After the January 24, 2014 telephone conversation, Gelfo sent Lombardo an invoice at Arrow Truck's Corporate Office.  The invoice provided instructions for payment via wire transfer with wiring instructions for Top Quality at its bank in Florida.  On January 31, 2014, a representative of Arrow Truck inspected nine of the trucks in Tennessee.  On February 3, 2014, Lombardo emailed Gelfo and indicated that certain repairs should be made to the nine trucks.  Top Quality subsequently made the repairs.

On February 12, 2014, Lombardo authorized payment for the nine trucks that had been inspected.  After the February 12 payment was made, Lombardo communicated to Gelfo that Arrow Truck would purchase the remaining three trucks based on an understanding that each would be in acceptable condition at delivery.  On February 13, 2014, Lombardo authorized the payment for the additional three trucks.

Plaintiff contends that it made payment to Top Quality.  The trucks were never delivered to Arrow Truck because Top Quality alleges it never received payment.[2]

Top Quality did not send any employees into Missouri and no employees of Top Quality entered Missouri in connection with the transaction.  Gelfo never entered Missouri in connection with the transaction and his only contacts with Missouri were telephone and email exchanges with Lombardo and other Arrow Truck representatives.

Plaintiff sued Defendants in state court and the case was removed to federal court.  Plaintiff's state-court petition ("Complaint") alleges two counts (1) breach of contract based on Defendant's failure and refusal to deliver possession of the trucks to Arrow Truck; and (2) fraud and misrepresentation based on the claim that Defendants induced Arrow Truck to purchase the trucks by sending titles purporting to show that Top Quality was the owner of the trucks, but Top Quality was not the owner of the trucks and the trucks remained encumbered with liens.  Plaintiff contends it would not have tendered payment for the trucks but for the fact that Defendants had represented Top Quality owned the trucks free and clear of any liens and/or encumbrances.

## II. DISCUSSION[3]

"To allege personal jurisdiction, 'a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'"  *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).  "If the defendant controverts or denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction."  *Id.*  Plaintiff's "showing must

---

[2] Although Plaintiff alleges it made payment to Top Quality, Defendants contends Arrow Truck wired money to a bank account in Georgia that was not associated with Top Quality pursuant to instructions from an imposter who Defendants did not know.

[3] Defendants first raised the issue of insufficient service of process because Plaintiff attempted service by certified mail, which would be improper in this type of case.  In response, Plaintiff argues and the Record reflects that Defendants were personally served on May 19, 2014.  *See* "Acknowledgement of Service" Doc. Nos. 11 & 12.  The Court finds that Defendants were properly served.

be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition hereto." *Id.* (internal quotation marks omitted).

There are two broad categories of personal jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction, on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* (quotation omitted). The issue in this case is whether Defendants are subject to specific jurisdiction and there is no need to discuss general jurisdiction further.

A federal court in a diversity suit may exercise personal jurisdiction only if (1) defendant's conduct was covered by Missouri's long-arm statue; and (2) the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Dairy Farmers of America, Inc. v. Bassett & Walker Intern., Inc.*, 702 F.3d 472, 475 (8th Cir. 2012); *see also Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012). Courts must conduct both parts of this inquiry. *See Dairy Farmers of America*, 702 F.3d at 475*; but see Fastpath, Inc. v. Arbela Technologies, Corp.*, No 13-2585, 2014 WL 3685908, at *2 (8th Cir. 2014).

## A. Missouri's Long-Arm Statute

Missouri's long-arm statute authorizes jurisdiction over any person or corporation as to any cause of action arising from the person's or corporation's "transaction of any business within the state." Mo. Rev. Stat. § 506.500.1(1). Transacting business in Missouri may include visiting the state, sending products to the state, or advertising in the state. *Dairy Farmers of America,* 702 F.3d at 476; *see Chromalloy Am. Corp v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997) (traveling to Missouri); *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327-28 (Mo. banc. 1984) (shipping materials into Missouri); *Simpson v. Dycon Int'l Inc.*, 618 S.W.2d 455, 457 (Mo. App. 1981) (sending advertising to Missouri and selling equipment to a business in Missouri). However, "the use of mail or telephone communications to

4

Missouri is not by itself the transaction of business." *Dairy Farmers of America*, 702 F.3d at 467.

Defendants did not transact business within Missouri.  Neither Gelfo, nor any employee of Top Quality, ever traveled to Missouri.  Defendants did not send the trucks to Missouri and did not order anything from Missouri.  The trucks were delivered and inspected in Tennessee.  Defendants did not advertise in Missouri.  Gelfo's communications with Plaintiff via phone and email alone does not amount to the transaction of business.  Defendants did not "transact business" in Missouri as contemplated by Missouri's long-arm statute.

Missouri's long-arm statue also applies to "[t]he making of any contract within the state."  Mo. Rev. Stat. § 506.500.1(2).  "For purposes of the long-arm statute, a contract is made where acceptance occurs."  *Stroben v. Mason*, 397 S.W.3d 487, 498 (Mo. Ct. App. 2013).  Plaintiff contends the contract was made in Missouri because while in Missouri, Lombardo accepted Defendants' offer to purchase the trucks.  Although "[t]he allegations of the [Complaint] are given an intendment most favorable to the existence of the jurisdictional fact," a court may also consider proper affidavits if filed in connection with the motion to dismiss.  *Bryant v. Smith Interior Design Group, Inc.*, 310 S.W.3d 227, 231 (Mo. banc. 2010) (quoting *Moore v. Christian Fidelity Life Ins. Co.*, 687 S.W.2d 210, 211 (Mo. App. 1984)).  First, Plaintiff directs the Court's attention to the following allegations contained in the Complaint:

- In early January 2014, Gelfo, in his capacity as an employee, agent and representative of Top Quality, negotiated for the sale of 12 2011 Mack CX4613 Trucks to Arrow Truck for a total purchase price of $570,000.00 ("Trucks"). Complaint, ¶ 5.
- Upon receipt of the invoices . . . Arrow Truck tendered payment to Top Quality as requested by Gelfo and Top Quality in the amount of $570,000.00.  Complaint, ¶ 6.

These two factual allegations do not establish that the contract was "made" in Missouri. It only alleges that Defendants provided an invoice to Arrow Truck and that Plaintiff tendered payment.  There is no mention of who offered to buy or who offered to sell the trucks, and who accepted either offer.

The parties' affidavits also do not favor Plaintiff's position.  Defendants argue the contract was made in Florida after Lombardo offered, on behalf of Plaintiff, to purchase six of the trucks for $48,000, and the other six for $47,000, after which Gelfo accepted the offer on behalf of Top Quality while in his office in Florida.  Gelfo Dec., ¶ 10.  Plaintiff attempts to controvert Defendants' contention with the following facts from Gelfo's Declaration:

- Gelfo acknowledges that Arrow Truck has been "made aware" of the 12 Mack Trucks.  Gelfo Dec. (Doc. # 7-3), ¶ 6.
- Gelfo provided an invoice with the conditional term that the invoice was "valid upon customer inspection."  Gelfo Dec., ¶ 13.

Neither of these facts establish that Lombardo accepted the offer, nor do they establish that the contract was made in Missouri.  Plaintiff then relies on paragraph 10 of Gelfo's Declaration for the proposition that:

- Lombardo and Gelfo had a phone call on January 24, 2014, to discuss the terms, and the parties came away from that conversation with an agreement as to price. Gelfo Dec., ¶ 10.

This characterization also fails to suggest Gelfo made an offer that Lombardo accepted. Moreover, paragraph 10 of the Gelfo Declaration actually declares that it was *Lombardo* who offered to buy, and Gelfo who accepted the offer.  Plaintiff's characterization of the Gelfo Declaration by generally stating that the parties "came away" with an agreement does not controvert Defendants' statement of fact and will not satisfy Plaintiff's burden of proving facts supporting Missouri's long-arm statute.

Relying on Lombardo's Declaration, Plaintiff also contends that the following events took place in Missouri:

- On approximately December 13, 2013, Gelfo, who was an employee of Top Quality, contacted [Lombardo] at Arrow's Corporate Office.  He asked whether Arrow Truck would be interested in purchasing twelve Mack brand used semi-trucks.  Lombardo Dec. (Doc. # 13-1), ¶ 7.
- Top Quality sent an invoice dated January 24, 2014, that contained the proposed terms of sale to Arrow's Corporate Office.  Lombardo Dec., ¶ 16

- After completing a satisfactory inspection of the Trucks, Arrow Truck directed payment from Arrow's Corporate Office.  Lombardo Dec., ¶¶ 18-23.

These facts do not establish that the contract was made in Missouri.  As stated earlier, for purposes of Missouri's long-arm statute, a contract is made where the acceptance occurred.  None of the facts highlighted by Plaintiff show that the contract was accepted in Missouri.  All they establish is that an initial offer was made by Gelfo, which was rejected by virtue of Lombardo's counteroffer.  An invoice was sent following several negotiations and payment was made after certain conditions were met.  Plaintiff has failed to establish that the contract was "made" in Missouri, and therefore Defendants are not covered by Missouri's long-arm statute as it relates to contracts made in Missouri.

Finally, Plaintiff seeks to rely on its fraud and misrepresentation claim for the assertion of jurisdiction.  The commission of a tortious act in Missouri subjects a person or entity to personal jurisdiction in the State.  Mo. Rev. Stat. § 506.500.1(3).

Plaintiff alleges: Defendants represented that Top Quality was the owner of the trucks; that the date payment was made for the trucks Defendants knew or should have known that Top Quality was not the owner of the trucks and that the trucks were encumbered with a lien; that Arrow Truck would not have tendered payment for the trucks but for the fact that Defendants represented that Top Quality owned the trucks free and clear of any liens; and that as a result of Defendants' fraud and misrepresentation, that Arrow Truck tendered payment for the trucks and was damaged.  To support its fraud and misrepresentation claim, Plaintiff relies solely on reverse side of one of the titles that Gelfo emailed Lombardo in which it appeared that a third party had assigned ownership of the at-issue truck to Top Quality.

The Missouri Supreme Court has recognized that sending false and misleading documents to Missouri by telephone and email is sufficient to demonstrate the commission of a tortious act within Missouri.  *See Bryant*, 310 S.W.3d at 232.  However, even if Defendants' alleged conduct of misrepresenting that it owned the at-issue truck by emailing the back of one title falls within the tortious conduct provision of Missouri's long-arm statute, the Court holds, which will later be discussed, that it still cannot

exercise personal jurisdiction over Defendants because it would not comport with the Due Process Clause of the Fourteenth Amendment.

B. Due Process

Even if the contract was accepted in Missouri and even if Defendants fall within the tortious conduct provision of Missouri's long-arm statute, this Court cannot constitutionally exercise jurisdiction over Defendants.  The Constitutional analysis requires several considerations:

> A federal court sitting in diversity may exercise jurisdiction over a nonresident defendant that has such minimum contacts with the forum "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L.Ed.2d 1283 (1958). The exercise of jurisdiction satisfies due process when the defendant's contacts with the forum are such that it "should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559. (1980).  In a contract case, [the Eighth Circuit] evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

*Dairy Farmers of America*, 702 F.3d at 477.  The Eighth Circuit has utilized the following five-factor test to determine the sufficiency of a non-resident defendant's contacts with the forum state: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Fastpath, Inc.*, 2014 WL 3685908, at *3.  Significant weight is given to the first three factors. *Id.*

Plaintiff has established the existence of a few incidental contacts with Missouri. Specifically, Gelfo made telephone calls and sent emails to Lombardo in Missouri. However, making telephone calls and sending emails to Missouri are not enough for this

Court to exercise personal jurisdiction over Defendants. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (no personal jurisdiction where non-resident defendant's contacts consisted of scattered emails, phone calls, and a wire-transfer to forum state; *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 523 (8th Cir. 1996) (affirming district court's dismissal for lack of personal jurisdiction where non-resident defendant's contacts with forum state consisted of numerous faxes and letters, several phone calls in connection with the contract in disputes, and choice-of-law provision).

Nor can jurisdiction be based on the contract at issue. Even if the contract was accepted in Missouri, this does not automatically establish that Defendants had sufficient minimum contacts in Missouri. "A contract between a plaintiff and an out-of-state defendant is not sufficient in and of itself to establish personal jurisdiction over the defendant in the plaintiff's forum state." *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 593 (8th Cir. 2011). The Supreme Court "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic . . . theories of the place of contracting or of performance." *Burger King Corp,* 471 U.S. at 478; *see also Digi-Tel Holdings*, 89 F.3d at 523 n. 5). "Instead courts should consider the terms of a contract and its contemplated consequences in determining whether personal jurisdiction over a non-resident defendant exists." *K-V Pharm.*, 648 F.3d at 594.

Considering the terms of the contract, this Court concludes that personal jurisdiction over Defendants does not exist. The trucks were not delivered to Missouri; they were delivered and inspected in Tennessee. The invoice noted that payment should be made by a wire transfer to Top Quality's bank in Florida. Payment was eventually wired from Missouri to a bank account outside of the state; although the Record is unclear as to where the payment was eventually received, payment was sent outside of the state and no payment was received by Top Quality in Missouri. The Court concludes that Defendants do not have sufficient minimum contacts with the forum. *See Fastpath, Inc.*, 2014 WL 3685908, at *3 (no personal jurisdiction over defendant in Iowa where defendant solicited business with an Iowa corporation, sent emails to Iowa, made two telephone calls to Iowa, made a website and webinar that

may have been viewed in Iowa); *Dairy Farms of America*, 702 F.3d at 478-79 (finding no personal jurisdiction over defendant in Missouri where no prior negotiations took place in Missouri and contract did not contemplate coordination and processing of orders in Missouri; because the contract was for a Colorado product delivered to Mexico and paid for in Illinois); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 (8th Cir. 1977) (finding that due process prevented jurisdiction where the contracts were not negotiated or executed in the forum, would not be performed there, the goods involved neither originated from nor were destined there, and the foreign actor employed no salesmen or agents there).

Finally, Plaintiff's fraud and misrepresentation claim does not change the Court's due process analysis.  Plaintiff bases its entire claim of fraudulent misrepresentation on one piece of evidence—the back of the title provided to Lombardo from Gelfo via email. Even if Defendants made a fraudulent misrepresentation in this email, it was the only fraudulent communication sent to Arrow Truck in Missouri established by the Record. This case is unlike *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2000), in which the Eighth Circuit found that the district court had personal jurisdiction over the defendants.  In that case, the plaintiff alleged fraudulent misrepresentation where defendants "made numerous phone calls and faxes and sent many invoices [to plaintiff in the forum] to implement their scheme" which lasted for more than a two month period. *Id.* at 941-43.  However, in this case, only a single email attachment was sent to Lombardo in Missouri that supports Plaintiff's fraud and misrepresentation claim.  The act of sending this email to the forum does not establish a sufficient quantity and quality of contacts to support exercising jurisdiction over Defendants.  The Court concludes that the Due Process Clause does not permit the exercise of jurisdiction over Defendants in Missouri.

### III. CONCLUSION

Personal jurisdiction is lacking and the case is transferred to the Middle District of Florida.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: August 12, 2014                    UNITED STATES DISTRICT COURT